UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 28, filed July 30, 2015)

I. INTRODUCTION

Plaintiff Juliet Arvakhi ("plaintiff"), a woman of Russian and/or Middle Eastern descent, filed this action against defendants the United States Department of Housing and Urban Development ("HUD"), Julian Castro, in his official capacity as Secretary of HUD, and Does 1 through 10 (collectively, "defendants"), on April 25, 2014. Dkt. 3 ("Compl."). The same day, plaintiff filed an amended complaint. Dkt. 6 ("FAC").[1] Plaintiff asserts claims for (1) discrimination on the basis of race or national origin in violation of Title VII of the Civil Rights Act of 1964; (2) harassment on the basis of race or national origin in violation of Title VII of the Civil Rights Act of 1964; and (3) retaliation in violation of Title VII of the Civil Rights Act of 1964.[2] Compl.; FAC.[3] In

---

[1] It is not clear which complaint constitutes the operative complaint in this action. While plaintiff's second complaint is styled as an amended complaint, her original complaint contains numerous exhibits upon which it appears plaintiff continues to rely. Furthermore, defendants have referred exclusively to plaintiff's original complaint. Accordingly, the Court has considered the allegations and claims in both complaints.

[2] Although plaintiff styles her third claim as one for "reprisal," it is in fact a claim for retaliation for engaging in protected activities. Accordingly, the Court evaluates plaintiff's third claim as a claim for retaliation.

[3] In the caption of her original complaint, plaintiff asserts a claim entitled wrongful termination. See Compl. However, in the body of the complaint she states only two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

brief, plaintiff alleges that defendants subjected her to a hostile work environment throughout her employment at HUD on account of her Russian and/or Middle Eastern descent.

On July 30, 2015, defendants filed the instant motion for summary judgment. Dkt. 28. Plaintiff filed an opposition on August 24, 2015, Dkt. 31, and amended her opposition on August 27, 2015, Dkt. 33. Defendants replied on August 31, 2015. Dkt. 35.[4]

---

claims for relief, i.e. discrimination and retaliation. Compl., pg. 5-6. No claim for wrongful termination is alleged in plaintiff's FAC. Moreover, from the record it is unclear if or when plaintiff's employment with HUD was terminated nor, if her employment was terminated, why it terminated.

[4] On September 21, 2015, the Court held a hearing on defendants motion for summary judgment. Dkt. 38. At the hearing, the Court provided the parties with a tentative order. Id. Plaintiff informed the Court that due to a medical condition she was unable to read and understand the Court's tentative ruling without assistance. Id. Accordingly, the Court allowed plaintiff two weeks in which to obtain assistance reading the tentative ruling and, if necessary, to file a response. Id. On October 5, 2015, plaintiff filed a supplemental brief. Dkt. 40. Plaintiff's brief largely fails to respond to the Court's tentative or add additional arguments in opposition to defendants motion. To the extent plaintiff has raised additional allegations regarding the conduct of her coworkers, the Court finds that, like plaintiff's other allegations, the conduct she complains of is more in the nature of routine workplace behaviors. For example, plaintiff alleges that "[o]ften [Morales] would tiptoes [sic] to my new cubicle whispering something knowing that I had dizziness." Id. at 7. For the reasons stated herein, the Court finds that such innocuous workplace behaviors do not give rise to a claim for either a hostile work environment or retaliation. Accordingly, while the Court has reviewed plaintiff's supplemental brief, it does not change the Court's ruling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

## II.   BACKGROUND

### A.   Plaintiff's Background and Employment by HUD

Plaintiff identifies as a Russian and/or Middle Eastern woman. Compl., pg. 2. At all times relevant to this action, she was an employee in the downtown Los Angeles branch of HUD's Departmental Enforcement Center ("DEC"). Def.s' Statement of Undisputed Facts ("DSUF"), 1; Compl. pg. 2.[5] DEC is an internal compliance division within HUD's Office of General Counsel. DSUF 1. The DEC branch in downtown Los Angeles is responsible for monitoring and enforcing HUD law and regulations throughout much of the western United States and several Pacific territories. DSUF 1-2. During the period relevant to this dispute, DEC Los Angeles employed approximately fourteen enforcement analysts as well as various support staff, including three enforcement assistants. DSUF 2.

Plaintiff was hired on September 5, 2007, as an enforcement assistant for DEC Los Angeles. DSUF 4. In this capacity, plaintiff performed a variety of administrative tasks such as handling the incoming and outgoing mail, making photocopies, and filing documents. DSUF 5. She also performed tasks related to word processing, preparing correspondence and reports, and managing program files and logs. Id. Plaintiff's immediate supervisor from September 5, 2007 to April 2009 was a Caucasian woman named Kimberly Martin ("Martin"). DSUF 6. From April 2009 throughout the remainder of the period relevant to this action, plaintiff's supervisor was DEC Los Angeles Operations Oversight Director, Lydia Morales, an Hispanic woman. Id.

---

[5] As noted below plaintiff has failed to comply with the Court's Local Rules in that she has not provided evidence that supports her objections to defendants' statement of uncontroverted facts. Courts are not obliged to rummage through the case files seeking evidence of a material factual dispute. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir.2001) ("even if an affidavit is on file, a district court need not consider it ... unless it is brought to the district court's attention in the opposition to summary judgment").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

### B. Events at DEC Los Angeles

Early in her employment, plaintiff began to assert that her job responsibilities were a source of stress for her. DSUF 7. In general, she complained that her supervisors had a tendency to give last minute assignments which interfered with her preparedness at work and her ability to take breaks and go home. See Dkt. 29, Morales Decl. ¶ 6; Compl. pg. 24. As a result of plaintiff's apparent stress regarding her job duties, her supervisors at DEC suggested on several occasions in 2008 through 2009 that she seek counseling through the Employee Assistance Program ("EAP"). DSUF 11, 12. EAP is a counseling resource available to federal employees to assist with work, personal, or other issues. Id. On December 15, 2008, Martin sent plaintiff an email expressing concern regarding plaintiff's stress and related health issues and suggesting that she contact a physician. Dkt. 29, Ex. 4. Martin also provided plaintiff with the phone number of EAP and stated, "[a]lways know that there is assistance available should you need it." Id. Plaintiff perceived these suggestions as a form of harassment and appears to have viewed being sent to EAP as a punishment. DSUF 13; Compl. pg. 24.

Throughout her employment, plaintiff also complained to her supervisors about the actions of several of her coworkers. DSUF 9, 10. In one instance, the date of which is unknown, plaintiff complained that a co-worker, Stephen Shalov ("Shalov"), was looking over her back and startling her while she was trying to speak with Martin. Dkt. 29, Martin Decl. ¶ 6. Martin, who was also Shalov's supervisor, states that he was merely standing in close proximity while waiting to discuss another matter with her. Id. Plaintiff also complained that Shalov was constantly interrupting and interfering with her work and that Martin showed favoritism towards Shalov and other employees "within her personal circle." DSUF 10.

On or about April 1, 2009, plaintiff was involved in a dispute with Martin regarding an office printer. Dkt. 29, Martin Decl. ¶ 7. In preparation for upcoming mid-year reviews, Martin was printing performance reviews for several DEC employees, including plaintiff. Id. Martin sent these reviews, which are considered confidential by DEC, to an office printer. Id. When Martin went to retrieve the performance reviews, plaintiff was standing at the printer holding a print job she had retrieved. Id. The performance reviews were no longer in the printer and therefore Martin asked plaintiff if she had taken her print job. Id. The parties dispute the events which followed. According to defendants, plaintiff became defensive and initially refused to show Martin

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

the print job she was holding. Id. Eventually, plaintiff agreed to show the print job to Martin who realized it was in fact the performance reviews. Id. Defendants contend that plaintiff then became agitated and demanded to see a union representative before discussing the matter any further with Martin. Id. ¶ 8. Plaintiff appears to contend that she picked up Martin's print job by mistake, but that Martin, upon seeing plaintiff holding the performance reviews, "charged forward on her desk towards [her]." See Opp'n., at 6, 18. Plaintiff states that she found Martin's conduct to be "scary." Id., at 6.

Around late March or early April 2009, plaintiff informed the DEC management that she was having a difficult time working with Martin as her supervisor. Dkt 29, Morales Decl. ¶ 7. The day after the incident involving the office printer, Morales asked plaintiff if she would prefer to have Morales as a supervisor instead of Martin. Id. ¶ 8. Plaintiff agreed to have Morales as her new supervisor. Id.

On or about April 3, 2009, plaintiff was scheduled to meet with Martin regarding her mid-year review. Id. ¶ 9. However, plaintiff informed Morales that she would not meet with Martin in her office unless a union representative was also present at the meeting. Id. Morales informed plaintiff that union representatives were not permitted to attend performance review meeting because the DEC considers the contents of such meetings to be confidential. Id. To Morales' knowledge, no union representative had ever attended a performance review meeting at the DEC. Id. Because plaintiff was not permitted to have her union representative in the meeting she continued to refuse to meet with Martin for her mid-year review. Id.

On May 12, 2009, plaintiff emailed Morales requesting that she be permitted to transfer her work station to a vacant cubicle because she found the atmosphere in her current work station distracting. Dkt. 29, Ex. 5. Morales approved the transfer. Dkt. 29, Morales Decl. ¶ 10. Shortly thereafter, plaintiff began complaining that the fluorescent lights above her new cubicle were irritating her. Id. Specifically, she stated that the lights were "just killing my eyes and penetrating my brain, and I just couldn't take it." Dkt. 29, Arvakhi Deposition, at 99:15-19. In an effort to block the light, plaintiff placed an umbrella above her work station. Id. In light of plaintiff's complaints, Morales permitted a maintenance crew to remove the fluorescent light over plaintiff's work station. Dkt. 29, Morales Decl. ¶ 10. After the light was removed, plaintiff removed the umbrella and informed Morales that the situation was now satisfactory. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
|---|---|---|---|
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

On or about August 13, 2009, plaintiff filed a formal complaint against HUD with the Equal Employment Opportunity Commission ("EEOC"). DSUF 22. On October 7, 2009, the EEOC accepted the following claim for investigation:

> Whether [plaintiff] was subjected to an ongoing hostile work environment, from May 2009 and continuing through the present [i.e. October 7, 2009], on the bases of race (Russian/Middle Eastern Culture/Ethnicity) and reprisal.

DSUF 22; Dkt. 29, Ex. 7. On April 20, 2012 an Administrative Law Judge ("ALJ") issued a decision, without holding a hearing, determining that plaintiff was not discriminated against on the basis of national origin or that defendants retaliated against plaintiff. Dkt. 29, Ex. 8. Plaintiff appealed that decision to the EEOC Office of Federal Operations ("OFO"). DSUF 24. On January 8, 2014, the OFO issued a decision affirming the decision of the ALJ. Id.

### C. Plaintiff's Additional Allegations

Plaintiff in her statement of disputed facts raises a number of additional allegations regarding the actions of her coworkers and supervisors. Defendants dispute that any of these events actually occurred and contend that plaintiffs allegations are not supported by any readily identifiable or admissible evidence. Defs.' Evidentiary Objections, at 1.[6]

---

[6] Federal Rule 56 and this Court's Local Rules require not only (1) that a party moving for summary judgment must present a statement of allegedly uncontroverted facts, along with citations to supporting evidence, but also (2) that the party opposing summary judgment must present an answering statement of genuine issues that either admits or controverts each of the moving party's allegedly uncontroverted facts—with citations to contrary evidence, if a given fact is disputed. See Fed. R. Civ. P. 56(c), (e); C.D. Cal. L.R. 56.

Here, while plaintiff has filed a statement of disputed facts, she merely states, "Objections begin with SUF 5 on ward[sic]." Pl.'s Statement of Disputed Facts ("PSDF"), at 1. She then proceeds to set forth what appears to be both her version of the relevant facts in this case and her legal arguments regarding why defendants' motion for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
|---|---|---|---|
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

      On one occasion, the date of which is unknown, plaintiff alleges that she observed Martin reading a news story online. Opp'n., at 10. Plaintiff contends that, in reaction to this story, Martin told her "with an angry tone of voice that the problem is these illegal Mexicans coming over." Id. at 10-11. Plaintiff alleges that this comment indicates that Martin had an "anti-foreigner attitude." Id. at 11. Plaintiff contends that throughout her

---

summary judgment should be denied. Beginning on page 10 and continuing through page 19, plaintiff identifies various "Unresolved Issues." Id. at 10-19. Numerous of these "issues" begin with the statement "Ms. Martin lied," presumably referring to the declaration of plaintiff's former supervisor, Kimberly Martin. See id. However, the vast majority of plaintiff's statement of disputed facts does not set forth actual disagreements regarding the underlying events in this case; rather, she asserts that these events were the equivalent of harassment and are evidence of a hostile work environment. For example, she does not dispute that her supervisors suggested that she seek counseling through EAP; instead, she appears to state that these suggestions were a form of harassment. And she does not dispute defendants' description of her job responsibilities, but rather states that defendants overburdened her by assigning too much work. Furthermore, to the extent plaintiff provides evidentiary support for her statements, it is either unclear to which evidence plaintiff is referring or whether that evidence is admissible or competent. Similarly, the numerous documents plaintiff has attached, ranging from handwritten notes regarding the activities of her coworkers to self-taken photographs purportedly documenting the deterioration of plaintiff's health, appear to be either incomplete, lacking in foundation, or irrelevant.

      Accordingly, while the Court recognizes that plaintiff generally takes issue with defendants' statement of undisputed facts, to the extent an evidentiary conflict is not readily apparent, the Court accepts as undisputed defendants' supporting evidence. See also Jacobs v. Woodford, 2011 WL 1706470, at *11 (C.D. Cal. Mar. 10, 2011) ("where a *pro se* plaintiff fails to cite specifically to evidence gainsaying the 'facts' listed in the moving party's SUF, but it is apparent from a relatively straightforward search through the record that a material evidentiary dispute exists, then the Court should deny summary adjudication despite the plaintiff's failure. Where such an evidentiary conflict is not readily apparent, however, the Court should decline to do Plaintiff's forgone work for him").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'    JS-6

| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
|---|---|---|---|
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

employment at HUD, this anti-foreigner attitude was directed against her by Martin and others on account of her Russian and/or Middle Eastern descent. Id.

Plaintiff generally alleges that her supervisors frequently required her to do the work of her coworkers. In particular, she identifies two assistants, Cathy Hutson ("Hutson") and Trisha Lim ("Lim"), whose work Martin or Morales would ask her to assist with or complete by herself. See, e.g. Opp'n., at 13 ("2007-2010 Ms. Martin would dump Ms. Huston's work on me."). Plaintiff also alleges that while her job description was purportedly limited to clerical work, she was asked to perform physically demanding and exhausting labor. Id. at 7. Finally, plaintiff alleges that she was given assignments at the last minute and was not given sufficient time to complete them. For example, plaintiff states that on "12/12/2008," Martin "did not give me enough time to process 15 letters with attachments which took two hours to complete on the following Monday." Id.

Plaintiff alleges that the "abuses" described above and in her opposition have resulted in significant deterioration in her health. Id. at 2. Specifically, she contends that she now suffers frequent dizziness and that at time during her employment she felt that she was on the "verge of getting a heart attack." See Id. at 3, 6.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
|---|---|---|---|
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   Hostile Work Environment

As noted above, plaintiff asserts claims for discrimination and harassment on the basis of national origin in violation of Title VII of the Civil Rights Act. In essence, plaintiff claims that she was subjected to a hostile work environment on the basis of her Russian and/or Middle Eastern descent. To establish a prima facie case for violation of Title VII through the creation of a hostile work environment, a plaintiff must allege (1) that she was subjected to verbal or physical conduct based on her race, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005).

A work environment is sufficiently hostile so as to violate Title VII if, in light of "all the circumstances," there exists harassment that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). A plaintiff must show both that the work environment was subjectively and objectively hostile. See Nichols v. Aztec Rest. Enters. Inc., 256 F.3d 864, 871-72 (9th Cir. 2001). In evaluating the objective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

hostility of a work environment, courts apply a totality of the circumstances test, looking at factors such as the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

### 1. Plaintiff has not shown a causal connection between the alleged harassment and her race or national origin

First, the Court finds that plaintiff has failed to establish a prima facie case of a hostile work environment, because she has not shown a causal connection between the alleged harassment by defendants and her race or national origin.

Plaintiff argues that the DEC Los Angeles office had a general "anti-foreigner" attitude and that this made her feel harassed on a constant basis. PSDF, at 11. However, the only incident plaintiff identifies in which a member of her office expressed an arguably negative opinion regarding foreigners, is Martin's alleged statement that "the problem is these illegal Mexicans coming over." See Id. at 10. Defendants object that this statement should be excluded as lacking any authentication or foundation. Defs.' Evid. Objections, at 3. However, even if the Court were to find this statement admissible, "an isolated comment is not sufficient to create actionable harassment under Title VII." McGinest, 360 F.3d, at 1113.

Courts have recognized that in some circumstances, "code words" or particularly offensive racial epithets may be sufficient to create a hostile work environment, even when used infrequently. See Aman v. Cor. Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996) ("[T]he use of 'code words' can . . . violate Title VII. Indeed, a reasonable jury could conclude that the intent to discriminate is implicit in these comments."). However, generally the significance of these phrases derives from being uniquely offensive to a particular racial or ethnic group. See, e.g. McGinest, 360 F.3d, at 1116 (noting that use of the "N-word" is "highly offensive and demeaning, evoking a history or racial violence, brutality, and subordination."). Here, not only has plaintiff failed to indicate that Martin's statements contained "code words" or epithets, but she also has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

alleged that she is Hispanic, the group to which Martin's statement is arguably most offensive. Moreover, plaintiff acknowledged at her deposition that neither of her supervisors has ever made disparaging comments about her specific race or national origin. See, e.g., Dkt. 29, Arvakhi Deposition, 109:23-35 ("Q: Did [Morales] every make offensive comments about your background or anything like that? A: No, she didn't – not my background, no.").

Plaintiff also argues that "Martin's discrimination based on race/national origin began in the form of showing favoritism towards her own special group of friends." PSDF, at 4. However, plaintiff provides no evidence that Martin's alleged favoritism was motivated by race. Rather, plaintiff herself seems to suggest that if Martin favored any of her employees, she did so on the basis of personal relationships with the employees with whom she was friends. See Id.; see also Compl., pg. 25 ("[Martin] constantly shows favoritism towards those individuals within her personal circle"). Moreover, the Ninth Circuit has held that favoritism, without more, does not constitute actionable discrimination under Title VII. See Shutt v. Sandoz Crop Protection Corp., 944 F.2d 1431, 1434 (9th Cir. 1991); See also, Daniels v. Donahoe, 901 F. Supp. 2d 1238, 1251 (D. Haw. 2012) ("[I]t is unclear to the court how [a coworker's] work habits or treatment would establish anything more than possibly personal favoritism, as opposed to race discrimination.").

Accordingly, the only evidence plaintiff identifies which could theoretically support her claim that she was harassed on the basis of her race or national origin is a single, potentially inadmissible statement about an entirely different racial group. This is insufficient to state a prima facie case that plaintiff was subjected to verbal or physical conduct based on her race. See also Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003) ("The allegedly harassing incidents, which occurred over the course of more than one year and only two of which contained racially related epithets, did not create a hostile work environment").

### 2. Plaintiff has not shown harassment sufficiently severe or pervasive to create a hostile work environment

Even if plaintiff could raise a genuine dispute that her alleged harassment was motivated by her race or national origin, the Court would still find that summary judgment is appropriate because the conduct plaintiff alleges was not sufficiently severe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

or pervasive so as to alter the conditions of her employment. To state a prima facie case of a hostile work environment, "a plaintiff must show both that the work environment was subjectively and objectively hostile." See Nichols, 256 F.3d at 871-72. "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998); see also Harris, 510 U.S., at 21 ("Conduct that is not severe or pervaisve enought to create an objectively hostile or abusive work environment…is beyond Title VII's purview.")

In her complaint and statement of disputed facts, plaintiff identifies a series of allegedly harassing events. These allegations include that she was generally overworked, given last minute assignments, and required to do the work of other employees. Plaintiff also describes numerous specific interactions and confrontations with her supervisors and coworkers, such as the incident involving the office printer and her interactions with her coworker, Shalov. It is not always clear how these events constituted harassment directed towards plaintiff, it appears that these events made plaintiff feel unwelcome and generally afraid of her coworkers and supervisors. However, while plaintiff may have found this conduct disturbing and emotionally upsetting, to constitute a hostile work environment, the workplace must be both subjectively and *objectively* abusive. See Nichols, 256 F.3d at 871-72.

The conduct plaintiff alleges can only be described as routine work place behavior. To the extent plaintiff found her coworkers' conduct offensive, such offense appears to have been inadvertent and a product of plaintiff's particular sensitivities. See also Zabkowicz v. West Bend Co., 589 F. Supp. 780, 784 (E.D. Wisc. Jul. 23, 1984) ("The requirement that the harassment be unreasonable assures that Title VII does not serve as a vehicle for vindicating the petty slights suffered by the hypersensitive."). For example, plaintiff has complained about the fluorescent lighting above her new work station. Dkt. 29, Morales Decl. ¶ 10. However, it was plaintiff herself who requested to move to a new work station, and plaintiff provides no indication that defendants intended or even realized that the fluorescent lights would be disruptive for plaintiff. See Id. In any event, after plaintiff complained her supervisor permitted a maintenance crew to remove the lighting. Id. Similarly, plaintiff states that her coworker Shalov would sneak behind her while she spoke with Martin and that she found this frightening. Dkt. 29, Martin Decl. ¶ 6. However, a reasonable person would not be frightened by standing in close proximity to one of their coworkers, particularly when the coworker had a valid reason for standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | 'O'   JS-6 |
|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date   October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | |

nearby, namely waiting to speak with his supervisor. In yet another example, plaintiff appears to have viewed her supervisor's suggestion that she seek help through the EAP as a form or either harassment or punishment. DSUF 13; Compl., pg. 24. However, plaintiff has also indicated that her job was a source of significant emotional and physical pain for her, which she communicated regularly to her supervisors. DSUF 7. Under these circumstances, a reasonable person could not view Martin's actions as harassment, but rather as an attempt to assist a struggling employee.

     Moreover, to the extent plaintiff complains of being overworked, asking an employee to perform additional or difficult assignments is not sufficiently severe or pervasive to constitute a hostile work environment. See also Griffin v. Potter, 356 F.3d 824, 839 (7th Cir. 2004) (assigning plaintiff to "difficult cases" and giving plaintiff "additional work that she perceived as outside her normal job responsibilities" did not constitute an adverse employment action."). And, the fact that plaintiff may have been asked on several occasions to perform certain late-arising assignments on an expedited basis does not create a hostile work environment. By comparison, courts have found that even highly offensive conduct, when occurring only occasionally, does not create a hostile work environment. See Hercules v. Department of Homeland Sec., 2008 WL 1925193, at *21. (N.D. Cal. Apr. 29, 2008) ("[W]hile it may have been inappropriate for [a supervisor] to generically disparage [plaintiff], or occasionally call her a "bitch," this is not evidence of a hostile work environment."); Alvarado v. FedEx Corp., 2006 WL 644875, at *16 (N.D. Cal. Mar. 13, 2006) ("[Plaintiff] has submitted evidence of a single racial slur used against him; although clearly offensive, the use of a single racial slur does not create a hostile work environment.").

     Accordingly, plaintiff attempts to turn a series of ordinary workplace episodes into a hostile work environment. While these events may have at times appeared unfair or disrespectful to plaintiff, from an objective standpoint the conduct plaintiff complains of is not sufficiently severe or pervasive to constitute actionable harassment pursuant to Title VII. See Galdamez, 415 F.3d at 1023.

     Therefore, defendants's motion is GRANTED as to plaintiff's claim for discrimination based on a hostile work environment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

**B.    Retaliation**

To make out a prima facie case of retaliation in violation of Title VII, an employee must show: (1) that she engaged in a protected activity; (2) that her employer subjected her to an adverse employment action thereafter; and (3) that a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Here, it appears that the protected activity in which plaintiff purports to have engaged was either requesting the assistance of her union representative in connection with the incidents involving the office printer and her mid-year review or filing a complaint with the EEOC. Compl. pg. 6. As a general matter, filing a complaint with the EEOC and requesting the assistance of a union representative may constitute protected activity. See Ray, 217 F.3d, at 1240 n.3 ("filing a complaint with the EEOC is a protected activity. Making an informal complaint to a supervisor is also a protected activity.") (citations omitted). However, in this case plaintiff was not entitled to the presence of her union representative during her mid-year review. DEC considered the contents of these reviews to be confidential, DSUF 18, and to the knowledge of both of plaintiff's supervisors no DEC employee had ever been permitted to have a union representative present during a mid-year review, Dkt. 29, Morales Decl. ¶ 9; Dkt. 29, Martin Decl. ¶ 9. Accordingly, it is not clear that the conduct plaintiff alleges was in fact protected activity.

Nonetheless, even assuming that plaintiff engaged in a protected activity, plaintiff does not clearly allege that she sustained an adverse employment action as a result of that activity. At most, plaintiff's retaliation claim can be interpreted as asserting that the conduct she alleges as the basis for her hostile work environment claim continued as a form of retaliation after she engaged in protected activity. However, as already stated, the conduct plaintiff complains about is in the nature of routine workplace behavior and does not rise to the level of actionable harassment under Title VII.

Moreover, plaintiff has failed to establish a causal connection between defendants' alleged conduct and her protected activities. Many, if not all, of the events plaintiff identifies as retaliatory began well before she engaged in protected activities. For example, in her statement of disputed facts, plaintiff alleges: "Ms. Morales kept dumping Ms. Lim and Ms. Hutson's work on me. It was clear to me that they did this to retaliate because by now I had filed an EEO complaint." PSDF, at 14. However, in the paragraph immediately preceding this allegation, plaintiff states that her supervisors were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-02816-CAS(Ex) | Date | October 15, 2015 |
| Title | JULIET ARVAKHI V. JULIAN CASTRO, ET AL. | | |

"dumping" Hutson's work on her from as early as 2007. Accordingly, plaintiff cannot establish that filing her EEOC complaint, or any other protected activity, was causally related to this alleged retaliation. See also Campbell v. Hagel, 536 Fed. Appx. 733 ("The district court properly granted summary judgment on [plaintiff's] retaliation claim…because [plaintiff] failed to raise a genuine dispute of material fact as to whether her filing of a complaint caused any adverse employment action.") (citing Univ. Of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013)).

And, following plaintiff's requests for a union representative, her supervisors took steps, not to retaliate against her, but rather to assist her in performing her job duties. For example, after the printer incident Morales suggested that plaintiff change supervisors. Dkt. 29, Morales Decl. ¶ 7-8. And, only a month after the printer and mid-year review incidents, Morales permitted plaintiff to change work stations. Id. ¶ 10. When the new work station was still not satisfactory for plaintiff, Morales had a maintenance crew remove fluorescent lighting that was agitating plaintiff. Id.

Accordingly, plaintiff has not raised a genuine dispute that she suffered an adverse employment action or that any adverse employment action she may have suffered was causally related to a protected activity. Therefore, defendants's motion is GRANTED as to plaintiff's claim for retaliation.

## V.   CONCLUSION

In accordance with the foregoing, the Court GRANTS defendants' motion for summary judgment in its entirety.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |